Argued March 11; decided July 27, 1896.

## WEST PORTLAND PARK *v.* KELLY.

[45 Pac. 901.]

1. ASSESSMENT AND TAXATION—"BLOCK BOOKS."— The assessment roll is the record provided by law in which an assessor shall enter the valuations of property, and other books, such as "block books," so-called, that he may have for his own convenience and information, are not official, and entries therein are but private memoranda: *Oregon and Washington Mortgage Savings Bank* v. *Jordan*, 16 Or. 113, cited and approved.

2. ERRORS OF ASSESSOR— UNEQUAL VALUATION.— While a corrupt or fraudulent assessment will not be sustained, mere errors of the assessor, though they may result in an unequal valuation of property, will not vitiate the tax levied thereon.

3. INJUNCTION TO ENJOIN COLLECTION OF TAXES—BOARD OF EQUALIZATION.— The filing of an assessment roll is constructive notice to the owners of taxable property of the valuation placed upon their property by the assessor, and upon the failure of the taxpayer to take advantage of the legal remedy by an appeal to the county board of equalization, he cannot afterwards maintain a bill to enjoin collection of a tax on the ground of overvaluation.

4. TENDER INTO COURT— OWNERSHIP.— Money or property paid into court on a tender is an admission that it belongs to the opposite party, and it may be drawn by such party at any time: *Oregon Railway and Navigation Company* v. *Oregon Real Estate Company*, 10 Or. 444, approved and followed.

From Multnomah: LOYAL B. STEARNS, Judge.

This is a suit by the West Portland Park Association to restrain the sheriff of Multnomah County

from selling the lands of the plaintiff situated in said county for the taxes assessed thereon for the year eighteen hundred and ninety-two. The facts are that the plaintiff, a corporation, was the owner and in the possession of certain lots in West Portland Park, which were subject to assessment and taxation for state and county purposes; that during said year the assessor, having in his office what he designated as "block books," in which a description of the real property and the names of the owners thereof were noted, entered a memorandum therein by which he placed a value of ten dollars upon each lot in said tract; that the plaintiff's agent whose duty it was to pay its taxes, having visited the assessor's office, and furnished that officer a list of its property, ascertained the value placed upon the said lots and entered in the block book, and, believing therefrom, that the value so noted would be the assessment thereof, failed to examine the assessment roll in reference thereto at the meeting of the county board of equalization; that the clerks in the assessor's office, in copying the memoranda from the block books into the assessment roll, by mistake entered a value of twenty dollars on each lot in the description of plaintiff's property, but made no change in the value of other lots in said tract; that the state board of equalization increased the value of all lots in said county thirty per cent. whereby the final assessment of plaintiff's lots became twenty-six dollars each, while the other lots were assessed at thirteen dollars only; that plaintiff had no knowledge of the entry in the as-

sessment roll of a different value on its lots until the taxes thereon become due, whereupon it refused to pay the same, and they became delinquent, and, a warrant being issued for their collection, the sheriff advertised the property for sale, to enjoin which this suit was instituted. The plaintiff tendered seven hundred and twenty dollars, one half the amount demanded, which it claims is the proportion of the tax legally chargeable against its property, and alleges in its complaint that the assessor valued its lots at the uniform rate of ten dollars each, and so entered the same in the original assessment roll; that in transcribing its assessment from the original roll to a duplicate thereof, to be filed with the county clerk, the assessor fraudulently, and by reason of prejudice against plaintiff, and in reckless disregard of his duty, caused the assessment of its property to be set down in the duplicate roll at the uniform rate of twenty dollars per lot, intending thereby to impose upon plaintiff an unequal and unjust assessment of its property, and prays for the relief hereinbefore stated. The issues having been joined, a trial was had, resulting in a decree dissolving the temporary injunction which had been granted, and dismissing the suit, from which the plaintiff appeals.

AFFIRMED.

For appellant there was a brief by *Messrs. Mitchell, Tanner and Mitchell,* with an oral argument by *Mr. Albert H. Tanner.*

For respondent there was a brief by *Messrs. Wilson T. Hume*, district attorney, and *John H. Hall*, with an oral argument by *Mr. Hall*.

Opinion by MR. CHIEF JUSTICE MOORE.

**1.**   The plaintiff's counsel contend that the injustice of the assessment complained of is so apparent that a court of equity should restrain the collection of that portion of the tax in excess of the amount legally due, and, having tendered the latter amount, the court erred in denying the relief demanded; while counsel for defendant insist that the plaintiff had a legal remedy for the correction of the irregularity by applying to the county board of equalization, but having failed to make such application, a court of equity is powerless to enjoin the collection of any portion of the tax. The organic law of the state provides that all taxation shall be equal and uniform, (Constitution of Oregon, Art. I, § 32,) and to attain this end authorizes the legislative assembly to provide by law for securing a just valuation of all property not exempt from taxation: Constitution of Oregon, Art. IX, § 1. Section 2752, Hill's Code, as amended by an act of the legislative assembly, approved February twentieth, eighteen hundred and ninety-three, (Session Laws, 1893, p. 6,) to compel uniformity in taxation, requires the assessor to assess the lands and lots owned by each person in his county at their true cash value, which shall be held and taken to mean the amount such property would sell for at a voluntary sale thereof in the ordinary course of business. The evidence shows that the

plaintiff could probably have obtained, upon a voluntary sale of its lots in the ordinary course of business, a sum equal to the value placed upon them by the assessor, but when the assessment complained of is compared with that of other lots of equal value in West Portland Park, it must be conceded that an injustice has been done the plaintiff by compelling it to bear an unequal burden. In alleging that the assessor valued its lots at the uniform rate of ten dollars each, and so entered the same in the original assessment roll, the plaintiff assumes that the block books constitute such rate; but these statements are not true, for the clerks in the assessor's office entered the value complained of in the original assessment roll which was filed in the clerk's office, a duplicate of which the assessor is required to make and retain in his office.

2. The plaintiff also alleges fraud on the part of the assessor as a ground of equitable interference to restrain the collection of the tax, and, had the proof supported the allegations of its complaint, the tax would have been void, in which case the power of the court to grant the relief demanded could hardly be questioned: *Milwaukee Iron Company* v. *Hubbard,* 29 Wis. 51; *Merrill* v. *Humphrey,* 24 Mich. 170; *McConkey* v. *Smith,* 73 Ill. 313; *Chicago, etc., Railroad Company* v. *Cole,* 75 Ill. 591; see also the compilation of authorities in the very exhaustive notes to *Holland* v. *Mayor of Baltimore,* 69 Am. Dec. 195. Mere errors of the assessor, resulting in inequalities in the valuation of taxable property, will not vitiate a

tax: (*Trustees Cincinnati Southern Railway Company v. Guenther*, 19 Fed. 395; *Smith* v. *Kelly*, 24 Or. 464, 33 Pac. 642); but should he, from corrupt motives, overvalue taxable property, any tax based thereon would be void, and its collection would be enjoined on account of the fraud: *Marsh* v. *Supervisors*, 42 Wis. 502; *Darling* v. *Gunn*, 50 Ill. 424. Or, if he adopt a system of valuation designed to operate unequally upon different classes of property, equity will interfere to restrain the operation of such an unconstitutional exercise of power: *Cummings* v. *National Bank*, 101 U. S. 153; *Chicago, etc., Railway Company* v. *Boar* of *Commissioners*, 39 Pac. 1039; *Andrews* v. *King County*, 1 Wash. 46 (22 Am. St. Rep. 136, 23 Pac. 409). The assessor must be responsible for the acts of his clerks, who entered in the assessment roll a valuation of twenty dollars per lot after the description of plaintiff's property, and such assessment must be considered the judgment of that officer. It is evident a mistake occurred in making out plaintiff's assessment, but there is certainly no evidence of fraud, and this being the ground upon which plaintiff's right to equitable relief depended, the failure in the proof must necessarily be conclusive of the right.

3. The next question for consideration is whether the plaintiff, by failing to apply to the county board of equalization for a correction of its assessment, is precluded from enjoining the collection of any portion of the tax. As an excuse for its failure in this respect, the plaintiff's agent, as a witness, testifies

that he relied upon his inspection of the entries of value made in the block books, and the representations of the assessor that ten dollars per lot would be the valuation of its property. Section 2762, Hill's Code, requires the assessor to prepare and retain in his possession a duplicate of the assessment roll, and make the necessary corrections thereon, so that it shall correspond with the assessment roll on file in the office of the county clerk, and also to make a plat of the government survey and town plats within his county, and note thereon the owner of each tract of land and of each town lot, and deliver such duplicate roll and plat, and other documents relating thereto, to his successor in office; but he is not required to note upon the plats or other documents the value of any taxable property. No assessment is therefore complete until the assessor enters in the assessment roll the value of real and personal property, *Oregon and (Washington Mortgage Savings Bank* v. *Jordan,* 16 Or. 113, 17 Pac. 624,) and hence any memorandum made or kept by that officer, to aid him in the performance of his duties, would not be binding either upon the state or the taxpayer. The assessor is a *quasi* judicial officer, vested by the statute with a discretion which he exercises in determining the value of taxable property, and, so long as the assessment roll remains in his possession, his judgment in this respect may be subject to change; but when he has filed the roll in the clerk's office, his duty and power are ended, and thereafter his judgment as to the value of property entered therein is to be determined from an inspec-

tion of the record, and, since it will be presumed that official duty has been regularly performed, it will also be presumed that the property assessed by him has been equally and ratably valued. Had the block books or other documents kept by the assessor been public records, so that the entries made therein would have constituted notice to all persons whose property might be affected thereby, the plaintiff could have relied upon his inspection of them; but such books and documents, though convenient for and valuable aids to the officer, are no part of the assessment roll, and convey no notice to the taxpayer of their contents. Nor should the representations of the assessor as to the value he expected to place upon property subject to taxation be binding upon the county, which, like other corporations, must speak by its records, and, being its mere agent that officer had no authority to make any statements that would be binding upon it; and, this being so, the plaintiff's agent should not have relied upon such representations.

In *Lefferts* v. *Supervisors*, 21 Wis. *688, it is held that it was not necessary to apply to a board of equalization for the correction of an assessment corruptly and fraudulently made by an assessor. This must be so, for such an assessment would be void, in which case it binds no one affected thereby, but, there being no evidence of fraud in the case at bar, this rule can have no application. "The valuation," says Mr. Chief Justice Waite, in *Cummings* v. *National Bank*, 101 U. S. 153, "as finally fixed by the proper officer or equalizing board under the law, is,

in my judgment, conclusive where there has been no fraud." In *Oregon and Washington Mortgage Savings Bank* v. *Jordan*, 16 Or. 113 (17 Pac. 624), STRAHAN, J., in rendering the decision of the court, says: "The plaintiff could have applied before the board of equalization of Multnomah County, then, and made such showing as would have induced that tribunal to make all necessary and proper corrections in its assessment; and, upon its refusal to do so, it could have sued out a writ of review, and brought the questions finally before the court. This was the plaintiff's remedy, and the only remedy under the facts disclosed by the complaint, if such facts under any circumstances furnished grounds for relief. No authorities have been cited showing that a party is entitled to relief by injunction, under the facts disclosed by the plaintiff, and it is believed that none have gone so far." When an assessment roll has been filed, it furnishes constructive notice to all owners of taxable property named therein of the value placed upon their property by the assessor, and if any such owner consider his property has been overvalued, the law affords him a tribunal, in the county board of equalization, to which he may apply for its correction, and, having this legal remedy, equity will not enjoin the collection of the tax, except upon the allegation and proof of fraud, or some other fact rendering void the assessment.

4. It is also contended that the defendant, having accepted the amount tendered by the plaintiff, waived the right to demand or claim any further

payment, and for that reason the plaintiff is entitled to the relief prayed for in the complaint. This objection must prove unavailing, for the plaintiff conceded that the amount tendered was due in any event, and this being so, the defendant had the right to accept it: *Oregon Railway and Navigation Company* v. *Oregon Real Estate Company*, 10 Or. 444; *Portland Construction Company* v. *O'Neil*, 24 Or. 54 ( 32 Pac. 764 ). The plaintiff having neglected to apply to the county board of equalization for the correction of its assessment, and there being no fraud therein, it follows that the decree is affirmed.

AFFIRMED.

Decided April 27, 1896.