CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. STATE OF NEBRASKA ET AL.

FILED DECEMBER 4, 1924.   No. 24088.

1. **Taxation:** ASSESSMENT: PRESUMPTION. The presumption is that when the state board of equalization and assessment values railroad property for assessment purposes it acts fairly and impartially in fixing such valuation.

2. ———: ———: BURDEN OF PROOF. The burden of proof is upon a railway company, seeking to set aside an assessment of its property made by the state board of equalization and assessment. to establish its contention that the value of its property has been fixed by the board at an amount greater than its actual value. or that its assessed valuation has not been fairly and properly equalized when considered in connection with the assessment of all other property.

3. ———: ———: FAILURE OF PROOF. The evidence in the case at bar does not substantiate the contention of the complainant that its property has been "systematically, intentionally, and uniformly" assessed at its full actual value, while other property has been assessed "systematically, intentionally, and uniformly" at less than its full actual value, and does not warrant a finding by the court that the assessment made is so excessive and unjust that it should be set aside.

ERROR to the State Board of Equalization and Assessment. *Proceedings dismissed.*

*E. P. Holmes, Guy C. Chambers, W. F. Peter* and *W. F. Dickinson,* for plaintiff in error.

*O. S. Spillman, Attorney General, George W. Ayres* and *Hugh La Master, contra.*

*Byron Clark* and *Reavis & Beghtol, amici curiæ.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, GOOD and THOMPSON, JJ.

LETTON, J.

The property of plaintiff in error, hereinafter termed the railroad company, was valued for taxation in 1923 by the state board of equalization and assessment at the sum of $10,694,409. Proceedings in error were prosecuted from this valuation to this court, which found "that the valuation of the property of complainant lacks reasonable uniformity with the assessment of lands and improvements; that, as the record recites, the railroad property has been assessed at full, actual value and that the other class mentioned has been assessed at a much lower percentage." The assessment was set aside and the proceedings remanded to the state board of equalization and assessment for further proceedings in accordance with law. 111 Neb. 362. Pursuant to this decision, another hearing for the purpose of ascertaining the value of the property of the railroad company was held by the board on March 25, 1924, which resulted in a finding that the property of the company at the date of the assessment in 1923 was worth $9,571,496, being $1,122,913 less than it had been found to be worth at the previous assessment. From this finding the railroad company again prosecutes error.

The petition in error charges that the board valued the petitioner's property for assessment purposes for the year 1923 at its full actual value; that its property was valued at $9,571,496, while its actual value is only $5,186,920; that the board erred in assessing the petition-

er's property at its full value, while all other property was
valued at less than its full value, and erred in refusing to
equalize the assessment in accordance with the evidence, by
either increasing the  valuation of all other property
or by reducing the valuation of petitioner's property in ac-
cordance with and in the same ratio as other property as-
sessed.

At this second hearing before the board, additional evi-
dence was produced by the company with respect to the
actual value of the railroad property.  The proper limits
of this opinion will not permit a minute and detailed state-
ment of the tables and classifications introduced in evi-
dence.  Many of the applicable principles of law are set
forth in the former opinion and will not be restated.  The
evidence of the company has been considered at length. The
total owned mileage of the system is 5,363.75.  The owned
mileage in Nebraska is 245.56.  In complainant's exhibit
6, in which the company compares the Nebraska mileage
with the sum of all the mileage both owned and leased, it
is stated that the percentage of line in Nebraska to that
of lines in other states is 3.41 per cent.  There is no leased
mileage in Nebraska, so as a basis of comparison the fig-
ures are fallacious.  Comparing owned lines in Nebraska
with owned lines in other states we find that 4.57 per cent
of the owned mileage lies within the state of Nebraska.
Using this figure in the computation, and considering the
market value of the stocks and bonds which are based upon
the mileage actually owned by the company, a value con-
siderably higher than the amount found by the board is
reached as the value of the Nebraska property.  It was ad-
mitted by the accountant testifying for the company that
one of the bases of valuation used by him was incorrect in
that it does not assign to Nebraska as large a proportion
of the stock and bonds issued, taken as representing value,
as ought to be assigned to it, if the miles of road where the
bonds are an actual lien are considered; that in dividing the
stocks and bonds upon the basis of miles of track operated
the same thing would be true, and also this would be true if

based upon transportation train miles. The evidence shows that the Rock Island system consists of 5,363.75 miles of line owned by the company, and also of many miles of leased lines, and of trackage rights over many miles; that the tentative valuation of the entire line made by the interstate commerce commission in 1915, exclusive of the Chicago, Rock Island & Gulf Railroad, and of equipment, amounted to $275, 363, 390, and it is shown that additions and betterments since July 1, 1915, to December, 1922, amounted to $22, 526, 737. The value of equipment on April 1, 1923, is not in evidence. There is evidence in this record, not produced before the board at the first assessment, as to the density of traffic in Nebraska as compared with that in other states. This evidence establishes that the density of freight traffic on the lines in Nebraska is less than half that of the average density per mile on the system, and that the density of passenger traffic is much less than the average density on the system. No doubt the board considered these factors. But it must be considered that the density of freight traffic and consequent enhanced value of the line at the convergence near Chicago—the neck of the bottle—is produced by the traffic arising on all the feeder lines, including the lines in Nebraska. There is also testimony by the complainant showing that at the former hearing errors were made in the computations introduced in evidence by it. If the accountants were in error then, may they not be equally in error now? The questions presented as to proper allocation of values are difficult to solve, and it is not to be wondered at that accountants, valuation boards and courts reach different conclusions in respect of this point.

That the actual value of the property was not properly equalized with the value of other property in the state is another complaint made. To disprove or qualify the evidence presented by the company as to the value of farm lands, the state introduced 44 affidavits respecting the market value of farm lands in Lancaster county, Nebraska. The evidence shows that the peak average value of farm

lands occurred about January 1, 1922, and that there has been a rapid decline since; that the ratio of assessed value to sale value is about 74.4 per cent., and not 68 per cent., as the evidence at the former hearing indicated. The sale prices in the testimony offered by the complainant were taken from the public records, excluding certain classes of conveyances, but it is shown that in some of them the actual consideration was lower than the price named in the conveyance.

Another consideration is worthy of mention. The value of railroad property, under the statute, is not to be equalized with the value of farm real estate alone. The intention of the legislature was that all property in the state should be valued and assessed upon practically the same basis. The board has power "to increase or decrease the assessed valuation of any class, classes or kinds of property in any county or tax district, whenever in their judgment it shall be necessary to make such assessment conform to law." Comp. St. 1922, sec. 5901. The burden of proof is upon the company to establish its contention that the value of its property has been fixed by the board at an amount greater than its actual value, or that its assessed value has not been fairly and properly equalized when considered in connection with the assessment of all other property, so that this disparity and lack of uniformity result in an unjust and unfair assessment. While some members of the court think the result reached is inaccurate, and the value as equalized is too high, it is a practical impossibility from the evidence before us to fix the precise equivalent of the actual value of the property. Approximation both as to value and uniformity is all that can be reached. We cannot say the company has sustained the burden of proof that the assessment is so unjust and arbitrary that it ought to be set aside. The proceedings in error are therefore

DISMISSED.

Note—See Taxation, 37 Cyc. pp. 990, 1119.